Mr. Matthews, please remain seated Thank you, Your Honor. May it please the Court. This is an appeal for the judgment without trial in an amount in excess of $36 million. When you have a judgment without trial, Your Honor, there's a number of things any defendant would lose. Can I ask you as a professional defender to clarify, are you representing all of the defendants here? That is correct, Your Honor. There are four defendants that I represent here. Ms. Matthews and Mr. McGuire. Northstar Metals, which is a company of Ms. McGuire, is no longer an operating concern. Mr. McGuire's company was McGuire's steel production company. They long had a position dissolved under Michigan law. I understand from Mr. Giussini just before the hearing today that Mr. McGuire had a point of bankruptcy. I can't confirm that. I don't know that to be true. Those are my clients, technically those four clients. So I guess this goes to your argument that there should not be joint and several liability. I guess, who does that cut for and against? It's just obvious that you're representing everybody, but you're arguing against joint and several liability. Correct, Your Honor. So what are you seeking in lieu of joint and several liability? We're seeking a trial, Your Honor, where the trial court can determine who is, in fact, responsible. Mr. McGuire, for example, McGuire Steel Directions, specifically, only had seven entries of the 96 entries that are in dispute here. Northstar Metals had 86 entries in a different time period and not overlap with Mr. McGuire's entries. McGuire Steel Directions entries. We're asking the trial court to sort that out, to see who is responsible at which time. What was their conduct? So, but at bottom, if one of your clients benefits, the other is going to take the loss, depending on how this stuff is- That could be an outcome. We don't think that would be the outcome, Your Honor. We think the outcome would simply be that none of our clients would lose. They have the same defenses. That's why there's no conflict, we believe, between them, to be able to say that, no, they share no responsibility with anyone. When we have a judgment without a trial, Your Honor, the defendants of any defendant, it leaves us three things. One is, of course, simply the opportunity to come to a courtroom, raise your hand, put something under oath, and then tell their side of the story. Offer their interpretation of statements that were taken in or out of context. The trial- But where is the error, specifically? What should not have gone into this decision? What should not have gone into the decision? Well, I'm trying to understand the issues that the facts that you believe the trial would be decided in favor of your clients. I'm not sure if I understand this question, Your Honor. What we're saying is that there were genuine- an important standard, of course, is that there were genuine issues and material facts that were not- that are appropriate for a trial. And what are those facts? There are three basic facts, Your Honor, that we think are relevant for the trial. The first one, though, that is absolutely controlling is the purity level of the silicon metal that was imported. As the record agrees here, the silicon metal that is subject to anti-dumping duty, over 139% anti-dumping duty, is only on silicon metal that is 96% to 99% pure. Therefore, it is obviously very important to know what is the purity of the level of the product that comes into the country here. The government relies, and the court eventually relied upon trial on two pieces of evidence that were proffered by the government. Number one was simply the tariff classification. And this is a simple mistake that's commonly made. All- almost all silicon metal that comes into the country, it's under tariff classification 2804.695,000. And that is everything from 0, 10, 50, 75, 93%, all silicon metal. Whatever do we have purity up to 99% coming into that tariff schedule, coming into that tariff provision. However, the anti-dumping order only covers- there's no dispute about this- only covers a very slim sliver of purity, 96% to 99%. Leaving open the actual question, what actually is the purity of the metal that comes into the country? But I thought the government, at least its response in the brief as I understood it, was that there were all of these documents. There was the entry summary documents, there was the certificate of origin, and that all of those recorded that the purity level was more than 96%. So that- do you agree with that, that that was the evidence in the record before the court of attorney? That is the evidence that the government raised, John. We dispute whether the purity level, and that was found in the affidavit by Ms. Matthews. But it was disputed by- in what way? With contrary analysis? No contrary analysis, Your Honor. It was a testimony that we would have been able to produce a trial. And it was in the affidavit that was supported by the lower court. Well, the problem for you, in terms of relying on the affidavit, is it not that this affidavit came in under consideration and was not indeed submitted to you by you in response to the government's motion for summary judgment? That is correct on the timing, Your Honor. We would have been able to- And don't you think- I mean, what can you point to to say that it's required that the affidavit be accepted? My understanding is the affidavit likely would be accepted if you could show that it was not available, that you couldn't have gotten that information before. But in the absence of that, has it been incumbent upon you to put all that evidence in the motion for summary judgment and not on reconsideration? No, we believe that the affidavit wasn't even necessary when we did do it. But here, in response to Judge Newman's question, you pointed to the affidavit. So I'm responding to that. So if we take the affidavit off the table because we assume that it should have been put in at the motion for summary judgment stage and was not, then what is your answer to Judge Newman's question about what evidence you had to refute the government's documentation with respect to the 96 percent purity level? Yes, Your Honor, in answer to your question specifically, our intent at trial was to challenge that piece of evidence. The invoice, for example, or the entry. Well, it's not enough. Your answer to summary judgment can't be we intended in trial to challenge it. The question before you, I think, is what response did you give to the motion for summary judgment to demonstrate that there was a factual dispute with respect to that matter? The factual dispute, we believe, Your Honor, existed before the summary judgment or anything. I think we would prevail at that trial without the affidavit or anything else there. I do see Your Honor's point here that the affidavit, if it was considered by this court to be late, we have to look at something else prior to the affidavit. We would have used simply the federal rules of evidence. The federal rules of evidence would allow us to challenge the validity of under hearsay or any other federal rule of evidence that could challenge that evidence. We believe we would have been successful on that. So I think that is why, like I said, there's three things why you have challenges or why you have a trial. One is so that someone can come to court and be heard, but also the federal rules of evidence here. We do agree, Your Honor, there was an invoice and there was an entry on every single entry, all 96 entries, regardless of who put them in here. An invoice, for example, I'll use that as an example. Every invoice had a country of origin and every invoice had a tariff classification. In some cases, not all cases, there was evidence of purity. We did not dispute and we never disputed that my clients ordered silicon metal from Korea, ordered silicon metal. That was supposed to be with a certain level of purity. And every invoice said it was 98.5% pure. And if true, that would make that silicon anti-dumping order here. The question is, is it true? And I think that is the goal for the federal rules of evidence. I envision... But you have some basis for arguing that it's not true, that you could be a royal judge when he was deciding summary judgment. I mean, you can't. Do you think it's enough to say we ought to defeat summary judgment because there are federal rules of evidence? No, I don't go that far, Your Honor. I don't have to be that... I can't go that far. But I certainly can't say how I would have said... So what did you tell... What did you give or tell? What was before the Court of International Trade in response to the government's documentation with respect to these certificates? The government had no documentation other than the defendant's documentation, the invoice and the... And it's up to the defendants then to explain whether that was true or not, whether that was valid or not. The things have been reversed. We all agree that there was an invoice from Korea. We all agree that there's something factually wrong on every invoice. We just disagree on where that error is. Every invoice also said it was from Korea, and that point is assumed by the government. They've chosen that piece of that evidence to be accurate. We're looking at another piece from that same manufacturer that said it could be. But they didn't come forward on summary judgment and say, It's our position this wasn't from Korea, just because the documents say it was. You ought to discount the documents. They put on a case. They put on a case, Your Honor. They didn't put on a case of trial where we could challenge that. They did point out that if this invoice is correct, then this would be a result the court could reach. But on the question I thought that you were raising on face value, they should have accepted that the stuff was imported from Korea rather than China. No, I didn't accept any of that. I didn't get face value at all, Your Honor. What I anticipated, frankly, was a sphere to debate at the trial level about what was physically, chemically in that metal. Customs has labs, and if they had tested, say, 90 percent of the silicon metal that came in and did not test 10 percent, they would have been able to say, We should extrapolate from the 90 to cover the 10. If they had taken a sample of just a few and tried to extrapolate to the whole 96 entries, we would have had an argument again we could have raised at trial. In this case, according to the discovery taken, there was no study by the government, no analysis whatsoever, leading us only to Korean-sourced documents. I think we are entitled to a trial question whether the Korean-sourced documents, which they themselves indict, can or cannot be relied upon. And that is where I thought our file would be at the trial court. So Your Honor is correct. We do not have a lab report that says it is only 94 percent pure, therefore we went. There was no lab report. We have testimony from the affidavit that says that they had problems with the quality. And that is something, an evidentiary matter, at least that could be explored at trial. In addition to the question of the purity of the documents, Your Honor, there is the question of joint and several liability here. And this is simply a factual issue that should be decided at a trial. You have two individuals. You have 96 entries total. They import over different periods of time. Throughout the motions, the government has only two reasons why they should be held jointly and several liable. One of them is some entries went through, some North Star Metals entries, went through Mr. McGuire's warehouse. We don't know how many, but we would stipulate that there were some that went through a warehouse. That by itself does not imply some sort of conspiracy or a joint and several responsibility. There is nothing illegal, improper, in violation of law to go through the Inwood, to go through the, to actually go through someone's warehouse. Last of all, they argue that they went to Korea together. We don't dispute that, Your Honor. The best, but the fact that they went to Korea is not dispositive here. What was done in Korea, and this is where the testimony that my clients were denied, is very important. What happened in Korea, who they speak with. I wasn't there. Government counsel was not there. They should have, before facing a $36 million judgment, they should have an opportunity to address what was done there. And that could only be done not by a lab report or a document or anything else here, except maybe the affidavit, but rather by their testimony. And it's testimony that we saw here, Your Honor. Yeah, but you didn't try to introduce an affidavit from them as evidence that could be exculpatory. That wasn't part of the record. No, we only have one affidavit, Your Honor, and that is, I think it simply contradicts what was said there. The affidavits, without question, I think are good valid affidavits. There's no question about that. The court, the government did not mean to strike the affidavits or quash them or anything like that. They were part of the record before the lower court, and now before this court, they present genuine issues of material fact. Wait, I don't understand. I thought the affidavits came in on the motion for reconsideration. They did, Your Honor. So the government is challenging them, whether or not they need to be considered. Well, we haven't heard that. That would be part of the record, either, since they weren't in court with the judge or something. They do make a reference to calling the machinery an affidavit, Your Honor, and the government does cite cases where there have been affidavits that have been struck, but only in two situations. One is where an affidavit contradicted deposition testimony. In another degree, you cannot correct a deposition on a motion for summary judgment with an affidavit. That would be unfair. That's not what happened here. And second of all, it's a matter of procedure. The appellate courts have looked at the affidavits. They have only struck them when there has been a request. When a lower court has evaluated whether it should be struck or not, has in fact struck them or not struck them, and that issue could be before this court. What we are left with here, Your Honor, is that there are simply genuine issues of material fact. This summary judgment, a judgment without trial, this magnitude should not have been ordered. It should not have been sought. David, that's for you from the government. Mr. Tessit. Good morning, Your Honor. May it please the Court. Under the standard for summary judgment, the moving party provides invisible evidence to the trial court, supporting every prong of its case. And as so long as for each prong of the case, there is enough evidence that a reasonable finder of fact could reach a conclusion supporting the moving party, then the burden falls explicitly. We understand that. But where are the deficiencies that you're relying on? Well, we're not relying on any deficiencies in our own evidence. No, I mean in their evidence. Well, in their evidence, they presented no evidence. We provided Rule 56H statements. Well, then let's assume that the tardy affidavit was probably before the court. Well, the only possible issue of fact that they raise in their untimely affidavit would be at Appendix Page 291, where Ms. Matthews stated that she was informed by unknown people that there were lab tests for certain merchandise that came in below the 96% amount. That evidence, which we noted to the trial court, and we noted in our brief, would be inadmissible as hearsay. It would be inadmissible under the best evidence rule and also a host of other evidentiary failures. So simply a statement that a lab report exists out there somewhere without even attaching a lab report is woefully insufficient to raise a material issue of fact. That's not even a mere scintilla of evidence. It is simply a post-judgment claim that the contemporary business records generated in the ordinary course of business, which we authenticated, which we provided to the trial court, the affidavit would simply be insufficient to overcome those based on its own inadmissibility and because of the lack of any foundation for the statement made in the affidavit. What's the standard for finding whether or not a card should be jointly and separately liable? Well, in this case, the standard that was relied upon by the trial court was that both of these individuals set into motion a joint scheme to import Chinese silicone metal by transshipping it through Korea and then bringing it to the United States. And the evidence is very telling. The trial court got it absolutely right. Even before the first entry was made, both Ms. Matthews and Mr. McGuire knew that Chinese silicone metal was subject to anti-dumping duties. They also knew that there was no refining in Korea. Ms. Matthews even noted in a pre-Korea visit, as with the dumping tax, my customers will not buy material from China at this time. Was this an affidavit that was before the statute? This wasn't one of the subsequent affidavits, right? No, no. This was in a note that she wrote to her Korean contact. Well, now we're talking about segregation. And you're saying that these notes and so on, if you mention them in your brief, were all before the trial judge, but there was a general objection, was there not, in the affidavit saying that these are disputed facts and there's something to be said on the other side if I had a trial. Well, we painstakingly put every one of these documents in front of Mr. McGuire and Ms. Matthews and the author of the document confirmed that they wrote these documents at the time and the dates on the document were correct. They validated the accuracy of those documents, which all speak for themselves. If you look at the documents, in fact, one message from Haesong to Ms. Matthews stated with respect to 98.5 silicone, which is subject merchandise, we received the cargo at Busan. We unload the material and load into new container. Please advise which shipping company you will use. If we use the same shipping company from Korea to USA as from China to Korea, it would save much time. This was early on in the scheme. Later on, there was a shipment of merchandise that ultimately ended up at the McGuire Steel Facility. The bags in which that silicone metal was contained broke. Ms. Matthews then wrote to the Korean supplier, the last shipment that we received from you had many bags that were broken on the bottom and when they were unloaded, the silicone metal fell out of the bottom of the bags. Also, about half the bags had Made in China stenciled on them. We cannot have Made in China on the bags, all in capital letters. Fortunately, customs did not open the containers for clearance. But if they did, the material would not be released to us without 167% tax. Please be careful about this. We cannot have this happen again. That's Appendix at page 2536. So based on the evidence that you know, you know what evidence you have, what could the other side have done in order to include some of the general? I mean, what kind of evidence then would be necessary for them to be able to demonstrate there's a question of material tax? Well, if they had any documentary evidence explaining that either the merchandise is actually Korean or for that matter, documentary evidence explaining that the merchandise is not subject merchandise, they might have been able to, they might have been able to overcome our showing, maybe with respect to certain entries, maybe with respect to certain individuals. I wish to add about the broken bag incident that that document was found at Mr. McGuire's office when customs agents executed a search warrant. So if the defendants had come up with some actual admissible evidence that called into question any of the documents that we placed in the record, then there would have been a genuine issue of material fact and we could have had a trial. However, every piece of evidence that was placed on the record points to only one conclusion, that both Mr. McGuire and Ms. Matthews jointly initiated a fraudulent scheme to transship Chinese silicone metal through Korea and that they knew that they were making material false statements to customs from the date of that first entry it came through. There could be no other conclusion from the only evidence that was placed upon the record. For these reasons, we respect the request of the Court of Affirmation. Let me ask you a question about this joint and several liability, which may, apparently, is part of the reason why we're here. What remains, assuming that we affirm where we are, what remains in terms of execution here? Accuracy is where I suppose the first law should deal. Well, both defendants reside in the Eastern District of Michigan and so the United States Attorney's Office for that district, the Civil Division there, is responsible for collection actions. I've been informed by them that they are aware of the stay on bankruptcy and they are not taking any action to place liens upon any property. So once this court affirms the final judgment, which the court does have jurisdiction over, the matter would go to the U.S. Attorney's Office who would then comply with the relevant bankruptcy stay with respect to Mr. McGuire and would, with respect to Ms. Matthews and the other defendants, would take appropriate action. And what's appropriate action? Is there any intervention in terms of relative culpability or ascertaining of how much was avoided by whom? No, because both of these individuals jointly put together a scheme to cause merchandise to be entered unlawfully into the United States. You're telling us it's a scheme, but we don't have a scheme before us. What we have is a matter of assessment of an added dumping duty. Whether it was a scheme or something else, I think is not relevant to this judgment. Is that right? Well, we believe it's relevant to the penalty. With respect to the lost revenue under Section 1592D, the only evidence on the record, as Mr. Hanson admitted, could lead a reasonable mind to conclude that each entry was subject to anti-dumping duties. And under Section 1592... Right, but that's not the scheme. That knowledge... I think that perhaps there's a line that we don't have to draw between knowledge that there is an outstanding added dumping order and liability under that order. Well, it would be liability for customs duties and customs collect... for the anti-dumping duties as collected by customs. And customs collects anti-dumping duties just like any other duties at the time of liquidation that issues a bill to the importer. And then under Section 1592, those duties... Section 1592D, those duties, the lost revenue, shall be restored to the United States by any culpable party when this court has reached that conclusion. But this isn't a mere run-of-the-mill anti-dumping case. Under 1592, as I understand it, there's a finding of willful violations and fraudulent behavior. So the penalty is a result of those findings already having been made. It's not a judgment, correct? Yes. And... the penalty was... and the amount of the penalty was based upon also unconstituted evidence of the domestic value of the merchandise that the United States provided and provided a foundation for to the trial court. Now, in the circumstances, Matthews could be held liable for all of them. Yes. Because he's an act of barbarism and bankruptcy. Yes, that's... that's a possibility. But both of these individuals participated in the scheme and both of them committed fraud and both of them jointly caused these entries to be made to the detriment of the United States. And that finding has been made below. That finding has been made below, and there's no contradictory evidence. Okay. Thank you, Mr. Titzen. Thank you, Your Honor. Mr. Benson. Thank you, Your Honor. Just a few points that were raised in the discussion, and they were good questions. The question of the word scheme. The use of the word scheme did not make it a scheme, Your Honor. If there's going to be a scheme, if there's going to be joint and several liability, joint and several conduct, what conduct did they do together? What specifically did they do together? The only thing we know from the record below is that they traveled to Korea. What's the significance of the fact that you didn't respond in your answer to that allegation? Your answer itself didn't raise the joint and several liability issue, much less evidence later on. Our initial answer, the initial complaint, certainly was a general denial. There was a general claim of joint and several liability. We had a general denial, and it was general in nature. We became more specific, and the judge said specifically, Ms. Matthews is duly and severably liable for this. That's what we got to say. Well, yeah. It was certainly at both the beginning and the end. We had a general denial in response to a general claim of joint and several liability here. But the government has the obligation then to demonstrate where they reacted in joint and several manner. What did they do together? There's nothing on the record that indicates they did anything together other than travel to Korea. Ms. McGuire, if you anticipate a trial, had there been a trial, that they could have explained in my presentation what they did in Korea. That is the evidence we have there. Maybe I'm mistaken about that. I thought there was some other evidence. For instance, I thought there was some statement on the record in their deposition where Ms. Matthews acknowledged that she conferred with Mr. McGuire on everything. I don't know who- That's SJA 2205. I mean, I thought there was- It wasn't- I mean, the government's evidence, I thought, included a demonstration of the two reacting together. I don't recall what exactly did or whose testimony that was. Your Honor, I do know, you know, just from his deposition, for example, Mr. McGuire was not even the biggest of imports. The North Star Metals couldn't get a bond, and so McGuire's deal of action got the import bond, and that was his involvement here. So that might have been construed as working together, but was that working together for negligence, post-negligence, or fraud in the importation of the goods? Mr. McGuire did nothing. If there's going to be joint and several liability, there's a responsibility of the government. It could be accomplished at a trial level to demonstrate what exactly they did, and then, with testimony from Mr. McGuire and Mr. Matthews, they'd be able to testify what they really did, and that is the kind of thing we have at a trial, Your Honor, where we go back and forth and have that. We were denied the opportunity to cross-examine the government witnesses. We were denied the opportunity to tell their side of the story here, and as I said before, the opportunity to present issues and rules of evidence. I want to follow up on one of the questions here, but the government went through a number of exhibits and said this proves this. The depositions, Mr. English, sir, if you've seen these, is correct. There are a number of documents there. We have to indicate those documents, and the government takes the next step and says, for the wording of that document, there must be negligence. For example, the bag said China and not Korea. Ms. Matthews said, don't make sure you don't have made in China bags. We don't know the context of that, why she said that, or anything else. We can't know that without her testimony, and a testimony is not allowed here. I see a lot. I thought I was out of time. I thought I was out of time anyway. It's blinking. Is there anything else you need to tell us? I think that will honor the rest of the committee. Thank you, Your Honor. Thank you.